[Cite as *State v. Booker*, 2023-Ohio-4231.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 23 CAC 03 0020 |
| | : | |
| KATRINA M. BOOKER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware Municipal
Court, Case No. 21CRB00098

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      November 21, 2023

APPEARANCES:

For Plaintiff-Appellee:

TYLER A. SANDERS
Assistant Prosecutor
70 North Union Street
Delaware, OH 43015

For Defendant-Appellant:

WILLIAM T. CRAMER
470 Olde Worthington Road, Suite 200
Westerville, OH 43082

*Delaney, J.*

{¶1} Defendant-Appellant Katrina M. Booker appeals the June 1, 2022 judgment entry of the Delaware Municipal Court. Plaintiff-Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} On January 25, 2021, Defendant-Appellant Katrina M. Booker was arrested and charged with theft, a first-degree misdemeanor in violation of R.C. 2913.02. She was arrested after she admitted to Sergeant Lee with the Delaware County Sheriff's Department that she shoplifted three items from the Home Depot located in Lewis Center, Ohio.

{¶3} Booker entered a plea of not guilty on December 15, 2021.

### Motion to Suppress

{¶4} On February 22, 2022, Booker filed a motion to suppress. Booker stated that Sergeant Andrew Lee effectuated an investigatory stop of Booker when she left the Home Depot. She argued Sergeant Lee did not have a reasonable suspicion that Booker was committing a crime or engaged in any illegal activity. Booker further argued Sergeant Lee asked Booker incriminating questions without advising her of her *Miranda* rights. She moved the trial court to suppress any evidence arising out of the Sergeant's investigation.

{¶5} The matter came on for a suppression hearing. At the hearing, Sergeant Andrew Lee testified as to his encounter with Booker on January 25, 2021. Sergeant Lee's body cam video of his encounter with Booker was presented as an exhibit and admitted into evidence.

{¶6} On January 25, 2021, Sergeant Lee was working a 10:00 a.m. to 6:00 p.m. shift serving civil legal papers. He was driving a marked police cruiser and wearing his

uniform. He parked his cruiser in the fire lane of the Home Depot store and served the civil paper to someone inside the store. When he got back into his cruiser after leaving the store, he noticed a woman exiting the Home Depot from the store's entrance. He did not hear any alarms coming from the Home Depot store. While working second shift for ten years, Sergeant Lee had prior experience investigating shoplifting complaints. The woman was carrying a large purse, which appeared to be overflowing. The woman's head was down, and she appeared to be protecting the bag tightly. Based on her mannerisms and his prior experience, he suspected the woman was possibly committing a shoplifting offense or some other criminal activity. At the hearing, Sergeant Lee identified the woman he saw as Booker.

{¶7} Sergeant Lee observed Booker walk through the parking lot towards the Steak n' Shake in the next parking lot. He drove his cruiser across the parking lot and stopped the cruiser, angling his cruiser into the rear entrance of a car wash. Sergeant Lee did not activate his lights or siren. Sergeant Lee's encounter with Booker took place by the rear entrance to the parking lot of a car wash between the Home Depot and the Steak n' Shake. Sergeant Lee exited his cruiser where Booker stood at the edge of the car wash parking lot towards Home Depot.

{¶8} After Sergeant Lee exited his vehicle, he engaged in the following dialogue with Booker as recorded by Sergeant Lee's body cam:

Sergeant Lee: How's it going?

Booker: Fine.

Sergeant Lee: What's going on?

Booker: Nothing.

Sergeant Lee: You lost?

Booker: Yeah. I was looking for my husband. I thought he was going to Steak Escape.

Sergeant Lee: You thought he was going to Steak Escape?

Booker: Yeah.

Sergeant Lee: Did you buy anything over here?

Booker: No because he was. I thought he was going to get some wall things (unintelligible) but they wasn't in there.

Sergeant Lee: You got a pretty big bag there?

Booker: Huh. Yeah, that's just some towels in it.

Sergeant Lee: Some towels in it?

Booker: Yeah, that's just some towels in it.

Sergeant Lee: Do you mind showing me that you didn't steal anything from Home Depot?

Booker: Yes.

Sergeant Lee: You do mind?

Booker: Yes.

Sergeant Lee: Cause it doesn't look like you have towels in there?

Booker: No, it's the (unintelligible) right here. (showing a pink fabric item in top of purse)

Sergeant Lee: Yeah, what are the boxes that are hidden under it?

Booker: Some stuff that I took.

Sergeant Lee: You walked out, yeah, some stuff that you took from there?

Booker: You want them back?

Sergeant Lee: Can you put your bag up here?

{¶9} Sergeant Lee testified that when Booker told him she had towels in the bag, he did not accept her explanation because he could see that she had merchandise in her purse, not towels. Booker's purse was searched on the hood of the cruiser. In the purse, there were three Caseta Smart Bridge Dimmer Switches, each valued at $99.95. Sergeant Lee requested a patrol unit for assistance. They contacted Home Depot, which confirmed the items found in Booker's purse were stolen from the Home Depot store. Home Depot wanted to pursue charges and Booker was placed under arrest.

{¶10} Booker filed a responsive motion on May 3, 2022. She argued the evidence showed that Booker's encounter with Sergeant Lee went beyond a consensual encounter; Sergeant Lee conducted an investigative detention of Booker.

{¶11} On June 1, 2022, the trial court denied Booker's motion to suppress. It found that Booker's interaction with Sergeant Lee was a consensual encounter. Booker was not subject to a custodial interrogation and did not require *Miranda* warnings.

**Change of Plea and Sentencing**

{¶12} On February 7, 2023, Booker appeared for a bond hearing after a bench warrant was issued when she failed to appear at the December final pretrial. Her counsel notified the trial court that Booker wanted to change her plea to no contest. The trial court engaged in the plea colloquy and accepted Booker's change of plea to no contest on the charge of theft, a first-degree misdemeanor in violation of R.C. 2913.02. The trial court found Booker guilty.

{¶13} The trial court sentenced Booker to 180 days in jail with 176 days suspended, jail time credit for 4 days served, 1 year community control, and a fine of $150.00. The sentencing entry was filed on February 7, 2023. It is from this judgment that Booker now appeals.

## ASSIGNMENT OF ERROR

{¶14} Booker raises one Assignment of Error:

THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE STATE AND FEDERAL CONSTITUTIONS BY DENYING APPELLANT'S MOTION TO SUPPRESS.

## ANALYSIS

{¶15} In her sole Assignment of Error, Booker argues the trial court erred when it denied her motion to suppress the evidence resulting from her stop by Sergeant Lee. We disagree.

{¶16} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's

conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶17} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶18} This Court has observed the law within the State of Ohio recognizes three types of police-citizen encounters: (1) consensual encounters, (2) *Terry* stops, and (3) arrests. *State v. Barnett*, 5th Dist. Richland No. 18CA76, 2019-Ohio-2313, 2019 WL 2451065, ¶ 17 citing *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC 07 0055, 2019-Ohio-3, ¶ 25 citing *State v. Stonier*, 5th Dist. Stark No. 2012 CA 00179, 2013-Ohio-2188, citing *State v. Taylor*, 106 Ohio App.3d 741, 667 N.E.2d 60 (2nd Dist. 1995). In this case, the trial court found the encounter between Booker and Sergeant Lee was consensual.

{¶19} In *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC 07 0055, 2019-Ohio-36, we reviewed what constitutes a "consensual encounter." A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *State v. Taylor, supra*. The United States Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[M]erely approaching an individual on the street or in another public place[,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145 (6th Cir. 1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the encounter is consensual, and no reasonable suspicion is required. *Bostick*, 501 U.S. at 434.

{¶20} The Ohio Supreme Court has held that a police officer's statement, "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or disregard. *State v. Yacobucci*, 5th Dist. Delaware

No. 18 CAC 97 0055, 2019-Ohio-36, ¶ 27 citing *State v. Smith*, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989).

{¶21} In *United States v. Mendenall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the United States Supreme Court made the following observation: "[w]e conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.*

{¶22} A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747-48.

{¶23} Booker argues that under the totality of the circumstances, her encounter with Sergeant Lee was not consensual. Sergeant Lee stopped Booker while he was in full uniform and driving a marked cruiser. He drove up to Booker while she was walking in a parking lot, stopped the cruiser, and got out of the cruiser to speak with Booker. Sergeant Lee asked Booker about the size of her purse. When she responded that she had towels in the bag, Sergeant Lee asked her if she minded showing him that she did not steal anything from Home Depot. Booker contends that this accusatory question,

considering the other circumstances, elevated the encounter from consensual to a seizure. Booker cites this Court to *State v. Goodloe*, 10th Dist. Franklin No. 13AP-141, 2013-Ohio-4934.

{¶24} In *Goodloe*, two officers approached the defendant while on patrol and noticed bulges on each side of the defendant's pants. The officers could identify one bulge as a cell phone but could not identify the other. *Id.* at ¶ 2. The officers parked their cruiser and approached the defendant on the sidewalk. One officer walked up beside the defendant and the other stood on the sidewalk in front of him. One officer asked the defendant if he knew of anyone looking into cars in the parking lot he had just walked through. When the defendant responded that he did not, the officer asked whether he had any firearms. The defendant did not respond verbally, but sighed, slumped his shoulders, and dropped his head. The officer perceived this to be an admission and reached for the bulge in the defendant's pocket. The bulge was a gun, which the officer took from the defendant. *Id.* The trial court granted the defendant's motion to suppress, finding the officers' actions were a sufficiently strong showing of police authority to convert a consensual encounter into a seizure. *Id.* at ¶ 3. The judgment was affirmed on appeal because the court found under the totality of the circumstances, the officers' show of authority would have caused a reasonable person to believe he was not free to leave. *Id.* at ¶ 15. As part of their determination, the court found the police officer's questions about criminal activity and whether an individual had any firearms were of such an "accusatory nature" that they "create[d] an air of authority that could *further* cause a reasonable person to believe that he was not free to leave and that he had to answer the officer's questions. *State v. Hurt*, 2d Dist. No. 14882 (May 5, 1995) (noting that type of questions asked by

officer during an encounter could indicate seizure). *See also State v. Cook*, 2d Dist. No. 20427, 2004–Ohio–4793, ¶ 15 (noting the officer's inquiry changed from requests for information to commands)." (Emphasis added.) *Id.* at ¶ 14.

{¶25} Under the totality of the circumstances in the present case, we do not find that Sergeant Lee's question about the contents of Booker's bag converted the consensual encounter into a seizure. Sergeant Lee, the only officer on the scene, drove to Booker's location in the parking lot without lights or sirens. In *Goodloe*, the trial court found it was significant for its determination that two officers blocked the defendant's path on the sidewalk, in addition to asking the defendant an accusatory question. By contrast, Sergeant Lee parked his cruiser but did not block Booker's route of travel. Sergeant Lee did not brandish his weapon or otherwise show any force when he encountered Booker. He engaged Booker in casual conversation, asking her what was going on and if she was lost. He said to Booker that she had "a pretty big bag there." Booker volunteered that she had towels in the bag. Sergeant Lee testified at the suppression hearing that he could see the merchandise in the bag. After Booker's response about the towels, Sergeant Lee asked, "Do you mind showing me that you didn't steal anything from Home Depot?" Booker responded to Sergeant Lee that she did mind showing him. Sergeant Lee did not respond that Booker's non-compliance would lead to her arrest. Booker showed him the pink towel on top of the purse. Because he could see them, Sergeant Lee asked her about the boxes hidden under the towel. Booker then admitted she took the merchandise from Home Depot.

{¶26} Under the totality of the circumstances, we agree with the trial court's determination that Sergeant Lee's encounter with Booker was a consensual encounter such that the Fourth Amendment was not implicated.

{¶27} Booker's sole Assignment of Error is overruled.

**CONCLUSION**

{¶28} The judgment of the Delaware Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.